IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRVINIA
AT CHARLESTON

IN RE: AVAULTA PELVIC SUPPORT SYSTEMS
PRODUCTS LIABILITY LITIGATION              MDL No. 2187

LISA SWANSON AND RICHARD SWANSON,    )
                                     )
    Plaintiffs,                      )
                                     )
v.                                   )   CIVIL ACTION  2:12-0151
                                     )
C. R. BARD, INC.,                    )
COVIDIEN INC.,                       )
COVIDIEN PLC,                        )
COVIDIEN INTERNATIONAL FINANCE, SA,  )
COVIDIEN TREVOUX, SCS,               )
MAREANE, SA,                         )
FLOREANE MEDICAL IMPLANTS SA,        )
and SOFRADIM PRODUCTION SAS,         )
                                     )
    Defendants.                      )
                                     )

## COMPLAINT

COME NOW LISA SWANSON AND RICHARD SWANSON as Plaintiffs herein and hereby file this Complaint, showing the Court as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiffs are citizens of the State of Pennsylvania.

2. Defendant C. R. Bard, Inc. ("Bard") is a New Jersey corporation with its principal place of business in New Jersey. All acts and omissions of Bard as described herein were done by its agents, servants, employees and/or owners, acting in the course and scope of their respective agencies, services, employments and/or ownership.

1

3. Defendant Covidien Inc. ("Covidien Inc.") is a Delaware Corporation with its principal place of business in Massachusetts. All acts and omissions of Covidien Inc. as described herein were done by its agents, servants, employees and/or owners, acting in the course and scope of their respective agencies, services, employments and/or ownership.

4. Defendant Covidien plc ("Covidien plc"), an Irish public limited company with its principal place of business in Massachusetts. All acts and omissions of Covidien plc as described herein were done by its agents, servants, employees and/or owners, acting in the course and scope of their respective agencies, services, employments and/or ownership.

5. Defendant Covidien International Finance, SA ("CIFSA") is a Luxembourg company with its principal place of business in Luxembourg. All acts and omissions of CIFSA as described herein were done by its agents, servants, employees and/or owners, acting in the course and scope of their respective agencies, services, employments and/or ownership.

6. Defendant Covidien Trevoux, SCS ("Covidien Trevoux") is a French company with its principal place of business at 116 Avenue Du Formans, Trevoux, France 01600. All acts and omissions of Covidien Trevoux as described herein were done by its agents, servants, employees and/or owners, acting in the course and scope of their respective agencies, services, employments and/or ownership.

7. Defendant Mareane, SA ("Mareane") is a French company with its principal place of business at 116 Avenue Du Formans, Trevoux, France 01600. All acts and omissions of Mareane as described herein were done by its agents, servants, employees and/or owners, acting in the course and scope of their respective agencies, services, employments and/or ownership.

8. Defendant Floreane Medical Implants SA ("Floreane") is a French company with its principal place of business at 116 Avenue Du Formans, Trevoux, France 01600. All acts and omissions of Floreane as described herein were done by its agents, servants, employees and/or

owners, acting in the course and scope of their respective agencies, services, employments and/or ownership.

9. Defendant Sofradim Production SAS ("Sofradim") is a French company with its principal place of business at 116 Avenue Du Formans, Trevoux, France 01600. All acts and omissions of Sofradim as described herein were done by its agents, servants, employees and/or owners, acting in the course and scope of their respective agencies, services, employments and/or ownership.

10. Plaintiffs are seeking damages in excess of $75,000.00. Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332.

11. This Court has subject matter jurisdiction over the parties pursuant to 28 U.S.C. § 1332(a) because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (c). Venue is also proper based on the PreTrial Order #1, filed on October 21, 2010, within In Re: Avaulta Pelvic Support Systems Product Liability Litigation (MDL Docket No. 2187) which resides within this District.

**FACTUAL BACKGROUND**

13. Plaintiff LISA SWANSON was implanted with the Avaulta System (the "Products") during surgery performed at Geisinger Wyoming Valley Medical Center in Wilkes-Barre, Pennsylvania.

14. The Products were implanted in Plaintiff LISA SWANSON to treat her pelvic organ prolapse, the use for which the Products were designed, marketed and sold.

15. As a result of having the Products implanted in her, Plaintiff has experienced significant mental and physical pain and suffering, has sustained permanent injury, permanent

and substantial physical deformity, has undergone and will undergo corrective surgery or surgeries, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, present and future lost wages.

16. Floreane, Sofradim and Covidien Inc. designed and manufactured the Avaulta Anterior and Posterior BioSynthetic Support Systems, including the Products that were implanted in Plaintiff.

17. Floreane, Sofradim and Covidien Inc. have admitted *in judicio* that they are the designers and manufacturers of the Avaulta BioSynthetic Support Systems.

18. Bard marketed, packaged, labeled, sold and distributed the Avaulta BioSynthetic Support Systems in the United States, including the Products that were implanted in Plaintiff.

19. Sofradim is, and at all times relevant was, a subsidiary of Floreane. Floreane is the sole shareholder of Sofradim. Floreane owns 100% of the capital of Sofradim. Floreane controls 100% of the voting rights of Sofradim. Floreane appoints the officers and directors of Sofradim. Floreane has the power to remove the officers and directors of Sofradim.

20. Floreane and Sofradim share the same principal place of business, 116 Avenue Du Formans, Trevoux, France 01600.

21. Sofradim is a "production line" of Floreane.

22. Floreane and Sofradim are members of a tax consolidation group, or "intégration fiscale," organized under French law, whereunder their corporate income taxes are calculated on the basis of their aggregated profits and losses, rather than individually. Floreane is the "head" of this tax group, and files a consolidated tax return for the group and pays taxes on behalf of the group.

23. Floreane is liable for any acts and/or omissions by or through Sofradim. Sofradim is so organized and controlled and its business conducted in such manner as to make it merely an

alter ego or business conduit of Floreane.  Because Sofradim's assets and capital are subject to the ownership and control of Floreane, Sofradim is undercapitalized and the failure to disregard Sofradim's corporate form would result in the inequitable and unjust result that Plaintiffs may be unable to satisfy any judgment ultimately obtained against Sofradim.  Sofradim acts as agent for Floreane.  Floreane and Sofradim combine their property and labor in a joint undertaking for profit, with rights of mutual control.

24. Covidien Trevoux and Mareane are direct shareholders of Floreane.

25. Covidien Inc., Covidien Trevoux, Mareane, Floreane and Sofradim are subsidiaries of Covidien plc and are wholly-owned by CIFSA.

26. Covidien plc is a holding company, the purpose of which is to co-ordinate the administration, finances and activities of its subsidiary companies, including Covidien Inc., Sofradim and Floreane, and to act as managers and to direct or coordinate the management of its subsidiary companies or of the business, property and estates of any subsidiary company, including Covidien Inc., Sofradim and Floreane.

27. The Articles of Association of Covidien plc provide in part that it shall indemnify any person who is serving or has served at the request of Covidien plc as a director or executive officer of another company, joint venture, trust or other enterprise, including a subsidiary of Covidien plc, against any expenses, including attorney's fees, judgments, fines, and amounts paid in settlement actually and reasonably incurred by him or her in connection with any threatened, pending, or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, to which he or she was, is, or is, threatened to be made a party, or is otherwise involved.

28. CIFSA is a holding company established by Covidien plc to own the operating subsidiaries of Covidien plc, to issue notes, and to perform treasury operations for Covidien plc.

29. When Covidien plc's immediate predecessor, Covidien Ltd., purchased Floreane, Covidien Ltd. acquired Floreane's assets and also assumed Floreane's liabilities. Covidien plc assumed Floreane's liabilities when it merged with and into Covidien Ltd.

30. The financial accounts of Covidien Trevoux, Mareane, Floreane and Sofradim are consolidated within those of CIFSA.

31. Covidien Trevoux, Mareane, Floreane, Sofradim, are part of "Le Comite d/enterprise de l'Unite Economique et Sociale," ("UES") an economic and social unit, organized under French law, which is defined as the "co-existence of an economic and social unity."

32. Covidien Trevoux, Mareane, Floreane, and Sofradim all share the same principal place of business, 116 Avenue Du Formans, Trevoux, France 01600.

33. Covidien Trevoux, Mareane, Floreane and Sofradim are parties to a cash pooling agreement, or "convention de trésorerie," the proceeds of which are ultimately distributed to Covidien plc and/or CIFSA.

34. Covidien plc, CIFSA, Covidien Trevoux, Mareane, Floreane and Sofradim share common officers and directors. Michel Therin is President of both Mareane and Floreane, "Directeur Général Délégué" for Sofradim, as well as "Vice President of Soft Tissue Repair and Biosurgery for Covidien plc. CIFSA's Managing Director (Principal Executive, Financial and Accounting Officer), Michelangelo Stefani, is the non-partner manager for Covidien Trevoux and a member of the Board of Directors of Floreane.

35. CIFSA conducts no independent business of its own, and its income is derived entirely from the continuing operations and cash flow through distributions from its subsidiaries, including Floreane and Sofradim.

36. CIFSA and/or Covidien plc own any and all trademarks and registered marks associated with Covidien Trevoux, Mareane, Floreane and Sofradim.

37. Covidien plc, CIFSA, Covidien Trevoux and Mareane are liable for any acts and/or omissions by or through Sofradim or Floreane. Floreane and Sofradim are so organized and controlled and their business conducted in such manner as to make them merely alter egos or business conduits of Covidien plc, CIFSA, Covidien Trevoux and Mareane. Because Sofradim's and Floreane's assets and capital are subject to the ownership and control of Covidien plc, CIFSA, Covidien Trevoux and Mareane, Sofradim and Floreane are undercapitalized and the failure to disregard Sofradim's and Floreane's corporate form would result in the inequitable and unjust result that Plaintiff may be unable to satisfy any judgment ultimately obtained against Sofradim and/or Floreane. Floreane and Sofradim act as agents for Covidien plc, CIFSA, Covidien Trevoux and Mareane. Floreane and Sofradim combine their property and labor with that of Covidien plc, CIFSA, Covidien Trevoux and Mareane in a joint undertaking for profit, with rights of mutual control.

## CAUSES OF ACTION

## COUNT I: NEGLIGENCE

38. Plaintiffs incorporate by reference paragraphs 1–38 of this Complaint as if fully set forth herein.

39. Defendants Bard, Covidien Inc., Floreane and Sofradim (hereinafter, "Defendants") had a duty to individuals, including Plaintiff, to use reasonable care in designing, manufacturing, marketing, labeling, packaging and selling the Products.

40. Defendants were negligent in failing to use reasonable care in designing, manufacturing, marketing, labeling, packaging and selling the Products.

41. As a direct and proximate result of Defendants' negligence, Plaintiff was caused and in the future will be caused to suffer severe personal injuries, pain and suffering, severe

emotional distress, financial or economic loss, including, but not limited to, obligations for medical services and expenses, present and future lost wages and other damages.

## COUNT II: STRICT LIABILITY – DESIGN DEFECT

42. Plaintiffs incorporate by reference paragraphs 1-38 of this Complaint as if fully set forth herein.

43. The Products implanted in Plaintiff were not reasonably safe for their intended use and were defective as a matter of law with respect to their design.

44. As a direct and proximate result of the Products' aforementioned defects, Plaintiff was caused and in the future will be caused to suffer severe personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including, but not limited to, obligations for medical services and expenses, present and future lost wages and other damages.

45. Defendants are strictly liable to Plaintiff for designing, manufacturing, marketing, labeling, packaging and selling a defective product.

## COUNT III: STRICT LIABILITY - MANUFACTURING DEFECT

46. Plaintiffs incorporate by reference paragraphs 1-38 of the Complaint as if fully set forth herein.

47. The Products implanted in Plaintiff were not reasonably safe for their intended use and were defective as a matter of law with respect to their manufacture.

48. As a direct and proximate result of the Products' aforementioned defects, Plaintiff was caused and in the future will be caused to suffer severe personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including, but not limited to, obligations for medical services and expenses, present and future lost wages and other damages.

49. Defendants are strictly liable to Plaintiff for designing, manufacturing, marketing, labeling, packaging and selling a defective product.

## COUNT IV: STRICT LIABILITY – FAILURE TO WARN

50. Plaintiffs incorporate by reference paragraphs 1-38 of the Complaint as if fully set forth herein.

51. The Products implanted in Plaintiff were not reasonably safe for their intended use and were defective as a matter of law due to their lack of appropriate and necessary warnings.

52. As a direct and proximate result of the Products' aforementioned defects, Plaintiff was caused and in the future will be caused to suffer severe personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including, but not limited to, obligations for medical services and expenses, present and future lost wages and other damages.

53. Defendants are strictly liable to Plaintiff for designing, manufacturing, marketing, labeling, packaging and selling a defective product.

## COUNT V: BREACH OF EXPRESS WARRANTY

54. Plaintiffs incorporate by reference paragraphs 1-38 of this Complaint as if fully set forth herein.

55. Defendants made assurances to the general public, hospitals and health care professionals that the Products were safe and reasonably fit for their intended purpose.

56. Plaintiff and/or her health care providers chose the Products based upon Defendants' warranties and representations regarding the safety and fitness of the Products.

57. Plaintiff, individually and/or by and through her physician, reasonably relied upon Defendants' express warranties and guarantees that the Products were safe, merchantable and reasonably fit for their intended purpose.

58. Defendants breached these express warranties because the Products implanted in Plaintiff were unreasonably dangerous and defective and not as Defendants had represented.

59. Defendants' breach of their express warranties resulted in the implantation of unreasonably dangerous and defective products in Plaintiff's body, placing said Plaintiff's health and safety in jeopardy.

60. As a direct and proximate result of Defendants' breach of the aforementioned express warranties, Plaintiff was caused and in the future will be caused to suffer severe personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including, but not limited to, obligations for medical services and expenses, present and future lost wages and other damages.

## COUNT VI: BREACH OF IMPLIED WARRANTY

61. Plaintiffs incorporate by reference paragraphs 1-38 of this Complaint as if fully set forth herein.

62. Defendants impliedly warranted that the Products were merchantable and were fit for the ordinary purpose for which they were intended.

63. When the Products were implanted in Plaintiff to treat her pelvic organ prolapse, they were being used for the ordinary purposes for which they were intended.

64. Plaintiff, individually and/or by and through her physician, relied upon Defendants' implied warranty of merchantability in consenting to have the Products implanted in her.

65. Defendants breached these implied warranties of merchantability because the Products implanted in Plaintiff were neither merchantable nor suited for the intended uses as warranted.

66. Defendants' breach of their implied warranties resulted in the implantation of unreasonably dangerous and defective Products in Plaintiff body, placing her health and safety in jeopardy.

67. As a direct and proximate result of Defendants' breach of the aforementioned implied warranties, Plaintiff was caused and in the future will be caused to suffer severe personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including, but not limited to, obligations for medical services and expenses, present and future lost wages and other damages.

## COUNT VII: LOSS OF CONSORTIUM

68. Plaintiffs incorporate by reference paragraphs 1-67 of this Complaint as if fully set forth herein.

69. This cause of action is asserted by Plaintiff Richard Swanson, who is the spouse of Plaintiff Lisa Swanson.

70. By reason of the injuries sustained by Plaintiff Lisa Swanson, Plaintiff Horace Forrest has been and will continue to be deprived of consortium, society, comfort, protection, and service, thereby causing and continuing to cause Plaintiff Richard Swanson grief, sorrow, mental anguish, emotional distress and pain and suffering.

## COUNT VIII:  PUNITIVE DAMAGES

71. Plaintiffs incorporate by reference paragraphs 1-70 of this Complaint as if fully set forth herein.

72. Defendants knew or should have known that the Products were defective and presented unreasonable risks of harm to Plaintiff.

73. Defendants' conduct as described in this Complaint, for which Plaintiffs are entitled to recover compensatory damages, manifested a conscious indifference to, and/or flagrant disregard of, the safety of those persons who might foreseeably have been harmed by the Products, including Plaintiff, justifying the imposition of punitive damages.

WHEREFORE, Plaintiffs demand trial by jury, judgment against Defendants C. R. Bard, Inc., Covidien Inc., Covidien plc, Covidien International Finance, SA, Floreane Medical Implants SA, and Sofradim Production SAS, jointly and severally, for compensatory and punitive damages in an amount exceeding $75,000, as well as costs, attorney fees, interest, and any other relief, monetary or equitable, to which they are entitled.

PLAINTIFFS DEMAND A TRIAL BY JURY.

DATED: January 23, 2012

By: /s/ Karen Barth Menzies
Mark P. Robinson, Jr.
Daniel S. Robinson, Esq.
Karen Barth Menzies, Esq.
Shannon Lukei, Esq.
ROBINSON, CALCAGNIE ROBINSON SHAPIRO DAVIS, INC.
19 Corporate Plaza Dr.
Newport Beach, California 92660
Tel.: (949) 720-1288
Fax: (949) 720-1292

*ATTORNEYS FOR PLAINTIFF*